IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JAMES BLOCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:14-cv-02602-TLP-tmp |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff appeals from the denial of his application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. (ECF No. 1.) For the reasons below, the Court AFFIRMS the Commissioner's decision.

**BACKGROUND**

In 2011, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. (Tr. 147–51.)[1] Plaintiff alleged disability because of neck and hand injury, and borderline intellectual functioning. (*Id.* at 28, 166.) Before the ALJ's decision, Plaintiff provided his Accumulative Record Sheet (the "School Record") from elementary school, which suggested that he had an IQ of 65 as a child. (*Id.* at 36.) That said, the Administrative Law Judge (the "ALJ") denied his application, holding that Plaintiff was not disabled under the Social Security Act (SSA) because his impairment did not meet or medically equal the

---

[1] The hearing transcript is not on ECF, so there are no PageID numbers for those pages.

criteria for a listing and because he was capable of jobs such as a store stocker. (*Id.* at 29–30.) Plaintiff appealed to the Appeals Council, but, it affirmed the ALJ's decision. (*Id.* at 1–6.)

Plaintiff then appealed this Court, arguing that the ALJ's decision was unsupported by substantial evidence in the record. Plaintiff contends that, with the addition of his School Record, his disability met or medically equaled "mental retardation" under 20 C.F.R. Pt. 404 App. 1, § 12.05(C) ("Listing 12.05(C)"). Alternatively, Plaintiff argues that the ALJ erred in failing to acquire an updated medical opinion based on the School Record. (ECF No. 11 at PageID 387.) Plaintiff argues also that the vocational expert's classifying Plaintiff as a skilled painter is an error. (*Id.* at 392.) Finally, Plaintiff argues that the ALJ failed to incorporate all the impairments into the residual functioning capacity (RFC), especially those relating to Plaintiff's neck injury under Social Security Ruling 98-6p. (*Id.* at 387.)

This Court finds that the record contains substantial evidence supporting a finding that Plaintiff does not meet or medically equal Listing 12.05(C). The Court also finds no error with the ALJ's decision to not obtain an updated medical opinion and that the ALJ properly relied on the vocational expert's classification of Plaintiff's previous work. Finally, this Court finds that the record contains substantial evidence supporting the ALJ's finding about the RFC. As a result, the ALJ's decision is AFFIRMED.

**STANDARD OF REVIEW**

"In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and thereby entitled to benefits." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing 42 U.S.C. § 405(h) (2018)). The district court's review of that determination "is limited to whether the ALJ applied the

2

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).[2]

"Substantial evidence requires more than a mere scintilla, but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks and citations omitted). "[I]f substantial evidence supports the ALJ's decision, [the] [c]ourt defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."). That said, if the ALJ "fails to follow agency rules and regulations, [the court] find[s] a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (internal citation and quotation marks omitted).

## ANALYSIS

### I. The Disability Test

The Court begins its analysis with the statutory definition of disability. "Disability" is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last

---

[2] If the Court finds insubstantial evidence to support the ALJ's decision, or that the ALJ applied incorrect legal rules or regulations, "[t]he court shall have the power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

for a continuous period of not less than 12 months." 20 C.F.C. § 46.905(a). To determine whether a person has a disability under the Social Security Act, the ALJ uses a five-step evaluation. (20 C.F.R. § 404.1520(a)(4)(i–v)).

First, is the applicant currently engaged in substantial gainful activity ("SGA")? *See* 20 C.F.R. § 404.1520(a). SGA is "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a)(4)(i). If Plaintiff is engaged in SGA, then the analysis ends there. *Id.*

Second, does the applicant have a medically determinable impairment, or a combination of impairments that is severe? *See* 20 C.F.R. § 416.972(a)(4)(ii). An impairment is "severe" if it significantly limits the person's ability to perform basic work activities. *See* 20 C.F.R. § 416.21. On the other hand, the impairment is not severe if the medical information establishes only a "slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.* If the impairment is not severe, then the ALJ will find that the applicant is not disabled. *See* 20 C.F.R. § 416.972(a)(4)(ii).

Third, does the impairment, or combination of impairments, meet or medically equal the criteria for an impairment under 20 C.F.R. Pt. 404 App. 1? *See* 20 C.F.R. § 416.972(a)(4)(iii). If the applicant's impairments either meet or medically equal the criteria of the listing, then the applicant is disabled. *Id.* If not, then the ALJ determines the applicant's "residual functional capacity" ("RFC") to perform past work. 20 C.F.R. § 416.972(a)(4). RFC refers to an individual's ability to do physical and mental work on a sustained basis despite the limitations from the impairments. 20 C.F.R. § 416.920(e).

Fourth, does the applicant have the RFC to perform the requirements of his past relevant work? *See* 20 C.F.R. § 416.920(a)(4)(iv). If so, then the applicant is not disabled. *Id.* But if not, then the analysis proceeds to the fifth and final step. *Id.*

Fifth, can the applicant do any other work considering his RFC, age, education, and work experience? *See* 20 C.F.R. § 416.920(a)(4)(v). If so, then the applicant is not disabled. *Id.* But if not, then she qualifies as disabled. *Id.*

In these matters, the burden of proof shifts at certain stages. For example, "the burden of proof lies with [the applicant] at steps one through four of the process . . . ." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). But, at the fifth step, "[t]he burden of proof shifts to the Commissioner . . . [to prove] that there is work available in the economy . . . ." *Her*, 202 F.3d at 391.

## II. Application of the Disability Test

The ALJ here found that Plaintiff failed to satisfy the third and fifth prongs of the above test. In particular, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listings of various disabilities under 20 C.F.R. Pt. 404 App. 1 and that Plaintiff can perform many jobs in the national economy. (Tr. 23, 29.) The ALJ reasoned that Plaintiff experienced no restriction in activities of daily living such as cooking, mopping, sweeping, vacuuming, loading the washer and dryer, mowing the lawn, raking the leaves, and helping out his mother around the house. (*Id.* at 24.) Plaintiff talks to people when they are around, and he has suggested that he gets along with his family, friends, and neighbors, so he has no difficulties in social functioning. (*Id.*) Furthermore, according to the vocational expert, Plaintiff could perform several jobs in the national economy, such as a store stocker. (*Id.* at 29.)

5

But Plaintiff argues that the ALJ committed a reversible error in not finding that Plaintiff's impairment met or medically equaled Listing 12.05(C)[3]. (ECF No. 11 at PageID 394.) Section 12.05(C) defines one of the ways one can establish that they meet the "required level of severity" for mental retardation. Under that section, the claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." *See* 20 C.F.R. Pt. 404 App. 1, §12.05(C). Alternatively, Plaintiff argues that the ALJ committed reversible error by not obtaining an updated medical opinion once new evidence arose. (*Id.*) Plaintiff also argues that the vocational expert's classifying Plaintiff as a skilled painter is error. (*Id.* at 392.) Finally, Plaintiff asserts that the ALJ failed to incorporate all the impairments into the RFC, especially those relating to Plaintiff's neck injury under Social Security Ruling 98-6p. (*Id.* at 387.)

### III. Plaintiff's Impairments Do Not Meet or Medically Equal One of the Listed Impairments under 20 C.F.R. Pt. 404 App. 1, §12.05(C)

Plaintiff's primary contention about the sufficiency of his impairments, centers on Listing 12.05(C) and the ALJ's failure to find that Plaintiff met the requirements for the designation of mental retardation under that listing. "The relevant Social Security regulations require the ALJ to find a claimant disabled if he meets a listing." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). Yet neither Listing 12.05(C) nor the Sixth Circuit requires the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.,* 544 F.App'x. 639, 641 (6th Cir. 2013); *See also*, *Smith-Johnson v.*

---

[3] In 20 C.F.R. Pt. 404 App. 1 there are lists and requirements for disabilities for various body systems. Section 12.00 defines Mental Disorders. As for "mental retardation," that is in §12.05.

*Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014). Instead, "a claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id. See also Sullivan*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* specified medical criteria").

As noted above, Section 12.05(C) defines one of the ways claimants establish that they meet the requirements for "mental retardation" under the SSA, and it has two parts. The first part is referred to as the "diagnostic definition." *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). To meet the "diagnostic definition," the applicant must show: (1) significantly sub-average general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two." 20 C.F.R. Pt. 404, App. 1, § 12.05.

The second part of the test for intellectual or mental disorders is referred to as the "severity criteria" of subsection C. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). This section requires: (1) a valid, verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing another and significant work-related limitation or function. 20 C.F.R. Pt. 404 App. 1 § 12.05(C). "The diagnostic definition is not satisfied merely because one Verbal IQ score is within the range contemplated by subsection (C) of the severity criteria." *Courter v. Comm'r of Soc. Sec.,* 479 F. App'x. 713, 721 (6th Cir.2012) (noting that an IQ score that satisfies the severity criteria alone does not require a finding of intellectual disability). The "results of standardized intelligence tests may provide data that help verify the presence of mental retardation" but they are "only part of the overall assessment." 20 C.F.R. Pt. 404, App. 1, § 12.00(D)(6)(a); *see Daniels v. Comm'r of Soc. Sec.,* 70 F. App'x. 868, 872–74 (6th Cir.2003) (evaluating additional evidence of intellectual functioning under the diagnostic criteria)."

*Sheeks* is an illustrative case on this issue. In *Sheeks*, the Sixth Circuit acknowledged that even when a finding of borderline intellectual functioning exists, that alone does not raise a substantial question whether the claimant meets the diagnostic definition of Listing 12.05. *Sheeks*, 544 F. App'x at 641–42. In its holding, the court found that it was significant that the claimant did not attend special education classes in high school, and he eventually earned his GED despite leaving high school in the eleventh grade. *Id.* The record did not show that the claimant had any trouble taking care of himself or handling social situations before the age of twenty-two. *Id.* Thus, the Sixth Circuit concluded that the ALJ did not commit a reversible error in failing to discuss Listing 12.05. *Id.*

There is substantial evidence here supporting the ALJ's decision that Plaintiff fails to meet the requirements for Listing 12.05. Plaintiff only provides the School Record to argue that he qualifies under Listing 12.05(C). (Tr. 36.) While this one-page document implicates the "severity criteria" under Listing 12.05(C), as Defendant points out, the document has little details and no narrative report to establish the IQ score's validity or its consistency with Plaintiff's performance. (*See* ECF No. 12, PageID 421.) And the document does not refute the substantial evidence in the record supporting the ALJ's ruling that Plaintiff does not meet all the requirements. Plaintiff insisted that he stopped working because of the issues with his neck and hands rather than any alleged mental deficiencies. (*Id.* at 232, 259–60.)

Although not dispositive, it is significant that no mental health professionals who examined Plaintiff diagnosed him with mental retardation. (*Id.* at 261, 269; 272; ECF No. 12 at PageID 422 (stating that the doctors found that there was no significant change from June 3, 2010, when the ALJ determined that Plaintiff suffered borderline intellectual functioning).); *see Smith-Johnson*, 579 F. App'x at 434 (finding it significant that no psychologist diagnosed

applicant as mentally retarded). In *Peterson v. Comm'r of Soc. Sec.*, 552 Fed. App'x 533, 539 (6th Cir. 2014) the court noted that the lack of such a mental retardation diagnosis "is probative for a 12.05C determination." Plaintiff cooks, washes dishes, mops, sweeps, vacuums, loads the washer and dryer, mows the grass, rakes the leaves, goes grocery shopping, does odd jobs to make money, and he can bathe and dress himself. (*Id.* at 232, 261.) The record also shows that Plaintiff had completed the eleventh grade and had not attended special education courses. (*Id.* at 260.) Even the School Record shows that he could progress through school and achieve passing grades in reading, writing, and English despite having an IQ of 65. (*Id.* at 36.)

Plaintiff's ability to perform all of these activities and Plaintiff's medical and educational history in the record show that he lacks sufficient deficits in adaptive functioning to qualify for Listing 12.05(C). *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013) (holding that a long work history and medical reports "support the less severe diagnosis of borderline intellectual functioning . . . and indicate that [claimant] is able to adequately manage normal activities of daily living"). For that reason, this Court finds that the ALJ's ruling that Plaintiff did not meet the requirements under Listing 12.05(C) is supported by substantial evidence.

Because substantial evidence supports a finding that Plaintiff does not qualify under Listing 12.05(C), the Court also finds that the ALJ did not err in failing to obtain an updated medical opinion based on the School Record. In *Hayes*, the Sixth Circuit recognized that the ALJ may order even more testing to more fully analyze the disability claim. *See Hayes*, 357 F. App'x at 675. Even if additional testing would have established the required IQ, that alone would not satisfy Listing 12.05 because the claimant must still satisfy all of the specified

medical criteria. *Id.* at 676. Because this Court determines that there is substantial evidence in the record to show that Plaintiff does not meet all the elements of Listing 12.05(C), this Court will not remand for an updated medical opinion.

IV. **The ALJ Properly Relied on Vocational Expert's Classification of Plaintiff as a Skilled Painter**

Plaintiff argues that the vocational expert's classifying Plaintiff as a "skilled" painter is an error. (ECF No. 11 at PageID 392.) Plaintiff contends that he should be classified as a "hand painter," a medium, unskilled occupation, and that his ability to perform unskilled occupation before becoming disabled is exactly what Listing 12.05(C) contemplates. (ECF No. 11 at PageID 393–94) (citing DICTOT 740.684-022). "Substantial evidence may be produced through the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley v. Sec. of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quotation marks omitted).

Here, the ALJ's hypothetical accurately reflects the medical and psychological makeup of Plaintiff. (Tr. 63, 259–60.) Plaintiff has not provided enough evidence to dispute the vocational expert's testimony or to overcome the medical and psychological evidence that supports a finding that Plaintiff does not fall under Listing 12.05(C). (*Id.* at 61–69, 232–34, 259–61, 268, 272.) As a result, the ALJ properly relied on the vocational expert's categorization of Plaintiff's work.

V. **Substantial Evidence Supports ALJ's Assessment of Plaintiff's RFC**

Plaintiff also challenges the ALJ's assessment of his RFC. (ECF No. 11 at PageID 395.) The RFC assessment is a function-by-function analysis of a claimant based on all of the relevant evidence of an individual's maximum ability to do work-related activities. *See Social*

10

*Security Ruling 96-8p*. The function-by-function assessment is necessary to determine accurately whether the claimant can perform past relevant work. *See id.* Plaintiff here alleged disability because of neck, hand, and back pain, and the ALJ went through and analyzed each function. (Tr. 25–28.) The ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible given the whole record. (*Id.* at 26.)

As for the neck pain, Plaintiff has a history of anterior plate placement and fusion from the C5 through the C7 disc level. (*Id.* at 233.) Even so, the neck had full flexion, 50 degrees extension, 70 degrees left rotation, 60 degrees right rotation, and 30 degrees side-bending bilaterally. (*Id.*) Plaintiff could sometimes lift and carry up to 50 pounds and 25 pounds often and could sit, walk, or stand for six hours in a workday. (*Id.* at 234.) Additionally, Plaintiff's ability to mow the lawn with a push mower and rake leaves is inconsistent with Plaintiff's alleged disabling neck pain. (*Id.* at 26.)

As for the hand pain, Plaintiff has mild osteopenia, a deformity in the proximal interphalangeal joint of the fifth digit (little finger) on the left hand, and flexion deformity at the PIP joint of the fifth digit without erosion on the right hand. (*Id.* at 303.) All the same, Plaintiff only experienced a decreased range of motion of the little fingers, had normal flexion of the MCP and PIP joints, normal extension of all other fingers, and only had a mild decrease in grip strength. (*Id.* at 26–27, 239.) Plaintiff mows the lawn, rakes leaves, does home repairs, does touch painting, and will look to make money from this type of work once the weather improves, which reveals that Plaintiff does not have a disability. (*Id.* at 27.)

Finally, while Plaintiff has alleged debilitating back pain, no objective evidence in the record supports this assertion, and it is Plaintiff's responsibility to provide medical evidence

to show that there is a disabling impairment. (20 C.F.R. § 416.012). Thus, this Court finds that there is substantial evidence supporting the ALJ's reasoning and conclusion for the RFC determination.

## VI. *Lucia* and *Jones Brothers* Do Not Require Remand

The Court brought up the constitutionality of the ALJ's appointment by ordering the Commissioner to show cause why this matter should not be remanded for another hearing because of the holdings in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018). (ECF No. 15.) The Commissioner responded that remand is not appropriate because Plaintiff did not raise the issue during the administrative process and thus forfeited the right to assert a challenge to the authority of the ALJ. (ECF No. 19 at PageID 441.) The Court need not reach whether the ALJ constitutes an inferior officer of the United States falling within the purview of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, because the Court finds that even if the ALJ's appointment were constitutionally invalid, Plaintiff forfeited the challenge.

As stated in *Jones Bros.*, courts generally require parties to raise as-applied constitutional challenges, as opposed to facial challenges, at the administrative level. *See Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, 2018 WL 4680327, at *1 (M.D. Tenn. Sept. 28, 2018) (citing *Jones Bros.*, 898 F.3d at 676). As-applied challenges dispute the way an agency executes its statutory duties, while facial challenges dispute the constitutionality of the statute itself. *Jones Bros.*, 898 F.3d at 675. And Appointments Clause challenges are nonjurisdictional and may be forfeited if not raised at the appropriate time. *See GGNSC Springfield LLC v. NLRB*, 721 F.3d 403, 406–07 (6th Cir. 2013).

Here, whether the ALJ had the constitutional authority to adjudicate Plaintiff's dispute would be an as-applied challenge, because the claim would challenge the appointment of the ALJ under 5 U.S.C. § 3105—not the constitutionality of the statute itself. *See Jones Bros.*, 898 F.3d at 676 (finding that the petitioner's claim was an as-applied challenge because it sought to enforce the appointment statute, not invalidate it). Because Plaintiff failed to assert the challenge at the administrative level, the Court finds that the challenge is forfeited.

## **CONCLUSION**

For all these reasons, the Court AFFIRMS the Commissioner's decision that Plaintiff is not disabled under the Social Security Act.

**SO ORDERED**, this 6th day of December, 2018.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE